**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISON**

| | | |
|---|---|---|
| KATHERINE RENEE RODRIGUEZ, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:22-cv-1151 |
| | ) | |
| v. | ) | |
| | ) | **PLAINTIFF DEMANDS** |
| CORELLE BRANDS, LLC., | ) | **TRIAL BY JURY** |
| | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT**

Plaintiff, **KATHERINE RENEE RODRIGUEZ** (hereafter referred to as "Plaintiff"), by and through her undersigned counsel, **JOHNSON BECKER, PLLC** and **TOMASIK KOTIN KASSERMAN, LLC**, hereby submits the following Complaint and Demand for Jury Trial against D\), Defendant **CORELLE BRANDS, LLC** and (hereafter referred to as "Defendant Corelle Brands")\and alleges the following upon personal knowledge and belief, and investigation of counsel:

**NATURE OF THE CASE**

1. Corelle Brands designed, manufactured, marketed, and sold its soda lime silicate Pyrex Glassware that suffers from a serious and dangerous defect. Specifically, during ordinary and routine use, Pyrex Glassware products manufactured from partially tempered soda lime silicate glass ("Pyrex Glassware") are prone to abrupt and dangerous shattering when exposed to temperature changes that reasonable consumers expect Pyrex Glassware to withstand based upon the product's history, advertising, and the company's express claims related to its durability ("Defect").

2. The defective products included in this case are all Pyrex Glassware products

made from partially tempered soda lime silicate glass sold by Corelle Brands (also called World Kitchen, LLC).

3. At all relevant times, Corelle Brands knew or should have known of the Defect but nevertheless marketed, advertised, and sold glass cookware under its Pyrex name without distinguishing between the older borosilicate glass products and the defective soda lime silicate glass products; failed to warn consumers that the type of glass used to manufacture its Pyrex products had changed and that the soda lime silicate glass used for the Pyrex products creates serious safety risks; and failed to recall the dangerously defective Pyrex Glassware despite its knowledge of the risk of significant injuries the Defect poses to consumers as well as the Defect's likelihood of causing a catastrophic failure of the product.

4. As a direct and proximate result of the Defect and the inherent safety risk posed by the Defect, and as a direct and proximate result of Corelle Brands' concealment of the Defect, its failure to warn customers before their purchase of the products' change and Defect, its failure to remove the defective Pyrex Glassware from the stream of commerce, and its failure to recall or remedy the Defect, Plaintiff purchased and used Corelle Brands' defective and unsafe Pyrex Glassware, which resulted in serious and significant injuries to the Plaintiff.

## THE PARTIES

5. Plaintiff Katherine Renee Rodriguez is a resident and citizen living in the city of Crockett, County of Houston, State of Texas.

6. Defendant Corelle Brands is a Delaware corporation with its principal place of business at 9525 West Bryn Mawr Avenue, Suite 300, Rosemount, Illinois 60018 and serves as the operating subsidiary of Corelle Holdings in the United States. Defendant Corelle Brands is part of Cornell Capital, a New York-based private equity firm.

7. Defendant Corelle is headquartered within this District in Rosemount, Illinois.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 all or a substantial part of the events or omissions giving rise to this claim occurred in this district.

10. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants have sufficient minimum contacts with the State of Illinois and has intentionally availed itself of the markets within Illinois through the promotion, sale, marketing, and distribution of its products.

11. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants Corelle Brands are headquartered in this District.

## FACTUAL BACKGROUND

12. Corelle Brands is engaged in the business of designing, manufacturing, warranting, marketing, advertising, and selling Pyrex Glassware.

13. Pyrex Glassware is used for food preparation through freezing, storing, cooking, baking, or microwaving foods placed in Pyrex Glassware, each of which subjects the glassware to different temperatures. Consumers turn to Pyrex Glassware because of its reputation for sturdiness and versatility in the kitchen. However, when partially heat-tempered soda lime Pyrex Glassware is exposed to a sudden change of temperature of approximately 99 degrees, it is susceptible to fracturing, breaking, shattering, or exploding. For example, a difference in temperature that exceeds 99°F can and does occur by placing a hot Pyrex Glassware item on a room temperature trivet. Further, such a difference in temperature exceeding 99°F can and does

occur through the baking process, or by leaving Pyrex Glassware in the oven to cool.

14. Throughout Pyrex Glassware's Owner's Manual and other written documents authored by Corelle Brands and distributed with its products or provided publicly to consumers through its website, Corelle Brands expressly warrants that Pyrex Glassware is free from defects, durable, and suitable for use when cooking at high temperatures.[1]

15. Several publications regarding consumer products, including Consumer Reports and the American Ceramics Bulletin, published studies showing that the partially heat-tempered soda lime silicate Pyrex Glassware has a much lower resistance to temperature change than traditional Pyrex Glassware made from borosilicate glass, and thus has a much higher susceptibility to fracturing, breaking, shattering, or exploding.

16. On or about March 5, 2020, the Plaintiff was using her Pyrex Glassware when it suddenly and unexpectedly shatter, causing her significant and severe injuries. The Pyrex Glassware shattered as a direct result of the Defect outlined above.

17. Plaintiff purchased and/or used her Pyrex Glassware reasonably believing it was properly designed and manufactured, free from defects, and safe for its intended use.

18. Plaintiff purchased and/or used her Pyrex Glassware for its intended purpose of preparing meals at home in a manner reasonably foreseeable by Corelle Brands.

19. However, the aforementioned Pyrex Glassware was defectively and negligently designed and manufactured by the Defendant in that the Defect renders it unsafe as it is unable to properly resist thermal shock for regular changes in temperature of 99°F or higher that occur when used for its intended purpose.

20. The Defect makes the Pyrex Glassware much more susceptible to sudden glass fracturing, breaking, shattering, or exploding during normal and expected household cooking,

---

[1] *See PYREX Limited Two-Year Warranty*, http://www.pyrexware.com/4.5-qt-oblong-bakingdish/5302470.html#start=2

exposing consumers to glass shards and hot contents contained within the glassware; just as it did in this case.

21. Corelle Brands knew or should have known that the Defect exists in the Pyrex Glassware at the point of sale and of the serious safety risk it posed to consumers and the public, including Plaintiff, but chose to conceal its knowledge from consumers who purchased Pyrex Glassware. In fact, when reports and studies were released explaining that the soda lime silicate Pyrex Glassware was defective and had a significantly lowered its thermal shock resistance, Corelle Brands—as noted above—actively attempted to refute and discredit those reports and studies.

22. As a direct and proximate result of the Defect and the inherent safety risk posed by the Defect, and as a direct and proximate result of Corelle Brands' concealment of the Defect, its failure to warn customers before their purchase of the products' change and Defect, its failure to remove the defective Pyrex Glassware from the stream of commerce, and its failure to recall or remedy the Defect, Plaintiff purchased and used Corelle Brands' defective and unsafe Pyrex Glass

## CLAIMS FOR RELIEF

### COUNT I
### STRICT LIABILITY

23. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

24. At the time of Plaintiff's injuries, Defendant's Pyrex Glassware were defective and unreasonably dangerous for use by foreseeable consumers, including Plaintiff.

25. Defendant's Pyrex Glassware were in the same or substantially similar condition as when they left the possession of the Defendant.

26. Plaintiff did not misuse or materially alter the Pyrex Glassware.

27. The Pyrex Glassware did not perform as safely as an ordinary consumer would have expected them to perform when used in a reasonably foreseeable way.

28. Further, a reasonable person would conclude that the possibility and serious of harm outweighs the burden or cost of making the Pyrex Glassware safe. Specifically:

   a. The Pyrex Glassware designed, manufactured, sold, and supplied by Defendants were defectively designed and placed into the stream of commerce in a defective and unreasonably dangerous condition for consumers;

   b. The seriousness of the potential injuries resulting from the product drastically outweighs any benefit that could be derived from its normal, intended use;

   c. Defendants failed to properly market, design, manufacture, distribute, supply, and sell the Pyrex Glassware, despite having extensive knowledge that the aforementioned injuries could and did occur;

   d. Defendants failed to warn and place adequate warnings and instructions on the Pyrex Glassware;

   e. Defendants failed to adequately test the Pyrex Glassware; and

   f. Defendants failed to market an economically feasible alternative design, despite the existence of economical, safer alternatives, that could have prevented the Plaintiff' injuries and damages.

29. Defendant's actions and omissions were the direct and proximate cause of the Plaintiff's injuries and damages.

30. Defendant's conduct, as described above, was extreme and outrageous. Defendants risked the safety and well-being of the consumers and users of its Pyrex Glassware, including the Plaintiff to this action, with the knowledge of the safety and efficacy problems and suppressed this knowledge from the public. Defendant made conscious decisions not to redesign, warn or inform the unsuspecting consuming public. Defendant's outrageous conduct warrants an award of punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit, and all such other relief as the Court deems proper.

## COUNT II
## NEGLIGENCE

31. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

32. Defendants had a duty of reasonable care to design, manufacture, market, and sell non-defective Pyrex Glassware that are reasonably safe for their intended uses by consumers, such as Plaintiff and her family.

33. Defendants failed to exercise ordinary care in the manufacture, sale, warnings, quality assurance, quality control, distribution, advertising, promotion, sale and marketing of its Pyrex Glassware in that Defendants knew or should have known that said Pyrex Glassware created a high risk of unreasonable harm to the Plaintiff and consumers alike.

34. Defendants was negligent in the design, manufacture, advertising, warning, marketing and sale of its Pyrex Glassware in that, among other things, it:

   a. Failed to use due care in designing and manufacturing the Pyrex Glassware to avoid the aforementioned risks to individuals;
   b. Placed an unsafe product into the stream of commerce;
   c. Were otherwise careless or negligent.

35. Corelle Brands knew or should have known that the Defect exists in the Pyrex Glassware at the point of sale and of the serious safety risk it posed to consumers and the public, including Plaintiff, but chose to conceal its knowledge from consumers who purchased Pyrex Glassware. In fact, when reports and studies were released explaining that the soda lime silicate Pyrex Glassware was defective and had a significantly lowered its thermal shock resistance, Corelle Brands—as noted above—actively attempted to refute and discredit those reports and

studies.

36. Defendant's conduct, as described above, was extreme and outrageous. Defendants risked the safety and well-being of the consumers and users of its Pyrex Glassware, including the Plaintiff to this action, with the knowledge of the safety and efficacy problems and suppressed this knowledge from the public. Defendant made conscious decisions not to redesign, warn or inform the unsuspecting consuming public. Defendant's outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit, and all such other relief as the Court deems proper.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF FITNESS
## FOR A PARTICULAR PURPOSE

37. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

38. Defendant manufactured, supplied, and sold its Pyrex Glassware with an implied warranty that they were fit for the particular purpose of cooking quickly, efficiently and safely.

39. Members of the consuming public, including consumers such as the Plaintiff, were the intended third-party beneficiaries of the warranty.

40. Defendants' Pyrex Glassware were not fit for the particular purpose as a safe means of cooking, due to the unreasonable risks of bodily injury associated with their use as described herein in this Complaint.

41. The Plaintiff in this case reasonably relied on Defendant's representations that its Pyrex Glassware were a quick, effective and safe means of cooking.

42. Defendant's breach of the implied warranty of fitness for a particular purpose was the direct and proximate cause of Plaintiff's injuries and damages.

43. Defendant's conduct, as described above, was extreme and outrageous. Defendants risked the safety and well-being of the consumers and users of its Pyrex Glassware, including the Plaintiff to this action, with the knowledge of the safety and efficacy problems and suppressed this knowledge from the public. Defendants made conscious decisions not to redesign, warn or inform the unsuspecting consuming public. Defendant's outrageous conduct warrants an award of punitive damages.

**WHEREFORE,** Plaintiff demands judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, and all such other relief as the Court deems proper.

## COUNT IV
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

44. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

45. At the time Defendants marketed, distributed and sold their Pyrex Glassware to the Plaintiff in this case, Defendants warranted that its Pyrex Glassware were merchantable and fit for the ordinary purposes for which they were intended.

46. Members of the consuming public, including consumers such as the Plaintiff, were intended third-party beneficiaries of the warranty.

47. Defendant's Pyrex Glassware was not merchantable and fit for their ordinary purpose, because they had the propensity to lead to the serious personal injuries as described herein in this Complaint.

48. The Plaintiff in this case and/or her family purchased and used the Pyrex Glassware with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

49. Defendants' breach of implied warranty of merchantability was the direct and proximate cause of Plaintiff's injury and damages.

50. Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the safety and well-being of the consumers and users of their Pyrex Glassware, including the Plaintiff to this action, with the knowledge of the safety and efficacy problems and suppressed this knowledge from the public. Defendant made conscious decisions not to redesign, warn or inform the unsuspecting consuming public. Defendant's outrageous conduct warrants an award of punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, and all such other relief as the Court deems proper.

## COUNT V
## PUNITIVE DAMAGES

51. Plaintiff incorporates by reference each of the allegations set forth in this Complaint as though fully set forth herein.

52. The acts, conduct, and omissions of Defendant, as alleged throughout this Complaint, were willful and malicious. It is unconscionable and outrageous that Defendant would risk the health, safety, and well-being of consumers, including the Plaintiff in this case. Despite its knowledge of the Defect Defendant made conscious decisions not to redesign, despite the existence of an economically feasible, safer alternative design, and not to adequately label, warn or inform the unsuspecting consuming public about the dangers associated with the use of its Pyrex Glassware. Defendants' outrageous conduct rises to the level that Plaintiff should be

awarded punitive damages to deter Defendants from this type of outrageous conduct in the future, as well as to discourage other Defendants from placing profits above the safety of consumers in the United States of America.

53. Prior to and during the manufacturing, sale, and distribution of its Pyrex Glassware, Defendants knew that said Pyrex Glassware were in a defective condition as previously described herein and knew that those who purchased and used their Pyrex Glassware, including Plaintiff, could experience severe physical, mental, and emotional injuries.

54. Further, Defendant knew that its Pyrex Glassware presented a substantial and unreasonable risk of harm to the public, including Plaintiff, and as such, Defendants unreasonably subjected consumers of said Pyrex Glassware to risk of serious and permanent injury from its use.

55. Despite its knowledge, Defendant, for the purpose of enhancing its profits, knowingly and deliberately failed to remedy the known defects in its Pyrex Glassware, and failed to warn the public, including Plaintiff, of the extreme risk of injury occasioned by said defects inherent in them. Defendants intentionally proceeded with the manufacturing, sale, distribution and marketing of its Pyrex Glassware knowing these actions would expose consumers, such as the Plaintiff, to serious danger in order to advance its pecuniary interest and monetary profits.

56. Defendants' conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant with willful and conscious disregard for the safety of the Plaintiff, her family, and consumers like them, entitling the Plaintiff to punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit, and all such other relief as the Court deems proper.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against the Defendant for damages, including punitive damages, to which she is entitled by law, as well as all costs of this action, interest and attorneys' fees, to the full extent of the law, whether arising under the common law and/or statutory law, including:

a. judgment for Plaintiff and against Defendant;

b. damages to compensate Plaintiff for her injuries, economic losses and pain and suffering sustained as a result of the use of the Defendant's Pyrex Glassware;

c. pre and post judgment interest at the lawful rate;

d. punitive damages on all applicable Counts as permitted by the law;

e. a trial by jury on all issues of the case; and

f. for any other relief as this Court may deem equitable and just, or that may be available under the law of another forum to the extent the law of another forum is applied, including but not limited to all reliefs prayed for in this Complaint and in the foregoing Prayer for Relief.

Respectfully submitted,

Date: <u>March 3, 2022</u>  BY:  <u>/s/ Timothy S. Tomasik</u>

**TOMASIK KOTIN KASSERMAN, LLC**
Timothy S. Tomasik
Loren Legorreta
161 N. Clark St., Suite 3050
Chicago, Illinois 60601
(312) 605-8800
tim@tkklaw.com
loren@tkklaw.com

*In association with:*
**JOHNSON BECKER, PLLC**
Adam J. Kress, Esq.  (MN ID #0397289)   *Pro Hac Vice to be filed*
444 Cedar Street, Suite 1800
St. Paul, MN 55101
(612) 436-1800
akress@johnsonbecker.com
***Attorneys for Plaintiff***